UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCOTT, #191939

           Plaintiff,           Case No. 03-75069

vs.

                                    Honorable Arthur J. Tarnow
                                    Magistrate Judge Steven D. Pepe

CARTENSEN, G. WILLIAMS,
T. HAYNES AND M. WILKENSEN,

           Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING**

**DEFENDANTS' MOTION TO DISMISS (DKT. # 21)**

**I.    BACKGROUND**

On December 12, 2003, Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a civil rights claim against RUO Cartensen, G. Williams, T. Haynes and M. Wilkensen, all of whom were employed as prison guards by MDOC during the relevant time period (Dkt. #1).

Plaintiff's complaint alleges that the Defendants have filed false major misconduct charges against him in retaliation for his filing lawsuits and grievances. Specifically, they retaliated against him due to his (a) filing Western District Case No. 95-571 against another prison officer (Dkt. #1, ¶¶ 22, 26), and (b) filing grievances and complaints against defendant Williams (Dkt. #1, ¶¶ 9, 14, 26).

Plaintiff filed an October 8, 2000, grievance against defendant Williams for what he perceived as "intentionally provoking hostility in prison personnel against [him] and for threatening

to subject [him] to false misconduct charges" (Dkt. #1, ¶ 9). In connection with this incident defendant Williams expressed anger over "grievances and complaints previously made and filed against him by Plaintiff" and that defendant Williams' "words, statements and threats were in reaction" to such (*id.*). In the October 8, 2000, *Step I Grievance Form* related to this incident Plaintiff alleges that defendant Williams stated to Plaintiff in front of other prison staff,"I do not care for you and intend on writing a ticket against you every chance I get" (Dkt. #1, Exhibit 1(a)).[1]

Plaintiff alleges that on November 9, 2000, defendant Williams "prodded" defendant Cartensen to take issue with the fact that Plaintiff was wearing his personal sweat pants to a health services appointment (Dkt. #1, ¶ 13). Plaintiff alleges that defendant Williams complained to defendant Cartensen about the grievances Plaintiff had filed against defendant Williams and suggested that defendant Cartensen could also be subject to being grieved by Plaintiff, to which

---

[1] Plaintiff attached as exhibits to his complaint a number of other grievances he had attempted to file against defendant Williams while he was on Modified Access Status. The proposed grievances are largely illegible, but the gist of Plaintiff's issues can be gleaned from the attached MDOC responses. On January 11, 2001, MDOC denied Plaintiff access to file two separate grievances against defendant Williams for (a) harassing him and laughing and bragging about it and (b) saying "'tell Judge Houke about it' to inflame, degrade and embarrass him" (Exhibit 6(b)). On January 29, 2001, Plaintiff was denied access to file five separate grievances against defendant Williams for (a) opening and slamming Plaintiff's door on three occasions in January 2001 (two grievances), (b) using profanity in front of another prisoner (apparently not Plaintiff), (c) stating "This is what you get for fucking with Officer Bair", and (d) ordering him to wear his state issued clothing to the control center (Exhibit 7(b)-(c)).

In his response to Defendants' motion for dismissal Plaintiff referred to further grievances and proposed grievances he had filed against defendant Williams (Dkt. # 27). On September 30, 2000, Plaintiff filed a grievance alleging that defendant Williams told others that Plaintiff planned on killing people when he was released from prison (*Id.*, Exhibit 1). On October 16, 2000, Plaintiff filed a grievance alleging that defendant Williams had interrupted a conversation Plaintiff was having and called him a liar "in a loud and angry voice" which Plaintiff alleged made him feel defendant Williams "was preparing to physically assault" him (Exhibit 2). Plaintiff also filed proposed grievances against defendant Williams regarding (a) screaming at another officer, (b) screaming across the base at Plaintiff for being out of place, and (c) denying Plaintiff the use of a stapler (Exhibit 3(b)-(d)).

defendant Cartensen responded "he must like receiving tickets" (Dkt. #1, ¶ 14). Plaintiff alleges that this statement can be taken to mean that "prison staff issue false tickets against prisoners in retaliation for utilizing the grievance process"(Dkt. #1, ¶ 14).

Plaintiff alleges to have overheard telephone conversations wherein "Defendant Cartensen and Williams conveyed complaints regarding Plaintiffs' grievance activities to Defendant Hayes and Wilkensen who in response both made references to Plaintiff that his grievances activities have and will continue to cause him 'problems'" (*id.* at ¶ 15).[2] Plaintiff alleges that on this same date defendant Wilkensen falsely charged him with being out of place when he was eating breakfast in the mess-hall after his health services appointment, and defendant Haynes falsely charged him with disobeying an order to leave the infirmary and return to the living unit to change out of the sweat pants (*id.* at ¶ 11-13,16).[3]

In the Major Misconduct Report regarding the disobeying a direct order ticket defendant Haynes indicated that he told Plaintiff to return to his living quarters to change his clothes, and that at 6:49 a.m. he returned to health care wearing blue shorts and carrying his sweat pants, and that defendant Cartensen had informed him that Plaintiff had not returned to his living quarters to change

---

[2] Defendants take issue with this allegation in that they interpreted it to mean that Plaintiff was alleging to have heard both ends of telephone conversations between Defendants (Dkt. # 21, p.5). Plaintiff explains in his response to Defendants' motion to dismiss that this allegation should be taken to mean that he heard defendant Cartensen speaking to defendant Haynes on the telephone and defendant Williams speaking to defendant Wilkenson on the telephone, both of which he was able to surmise because the caller identified the callee by name, and that later that same day defendants Haynes and Wilkenson each told Plaintiff that his grievance activities would cause him problems (Dkt. #27 at Scott Affidavit, ¶¶ 18-20).

[3] Defendant Cartensen also wrote a misconduct ticket against Plaintiff on this date for failing to obey an order to change out of sweat pants before leaving the housing unit in the first instance, but Plaintiff has not contested the validity of that ticket in his allegations (Dkt. #1, Exhibit 8).

3

his clothes as defendant Haynes had ordered (Dkt. #1, Exhibit 3(b)). Defendant Cartensen wrote a statement in support of defendant Haynes' report in which he indicated that Plaintiff had not returned from health care to change his clothes as defendant Haynes had ordered (*id.* at Exhibit 3(c), *see also*, Exhibit 3(f)). Defendant Wilkinson also wrote a statement in support of defendant Haynes' report, claiming that he saw Plaintiff change his clothes in the doorway of the health care entrance at 6:47 a.m. (*id.* at Exhibit 3(e)). The yard pass from his housing unit for his health care visit was issued at 6:25 a.m., and shows Plaintiff signed in at health care at 6:33 a.m., was released to his housing unit at 6:47 a.m. and signed back in at his housing unit at 6:49 a.m. (*id.* at Exhibit 3(d)).[4]

Defendant Wilkinson wrote the Major Misconduct Report regarding the out of place ticket stating that he saw Plaintiff eating breakfast at 6:55 a.m., when his unit was not called to eat until 0720 hours (Dkt. #1, Exhibit 3(a)).

Plaintiff alleges that these charges were proved to be false on November 10, 2000, when they were dismissed "on the basis that no such offenses occurred and that the statements and allegations giving rise to same were and are false" (*id.* at 18). The reviewing officer, Sergeant Stoltenbeg, dismissed the out-of-place ticket because he found that Plaintiff had received *verbal* permission from defendant Haynes to eat in the mess hall after his health services appointment (*id.* at Exhibit 3(a)). Sergeant Stoltenberg dismissed the ticket regarding the failure to obey a direct order because he

---

[4]In his response to Defendants' motion to dismiss Plaintiff alleges that he was signed in at 6:49 a.m. at his housing unit by defendant Cartensen (Dkt. # 27, p. 3), that defendant Cartensen asked for the yard pass back from Plaintiff when Plaintiff returned from health care the second time, that Plaintiff inadvertently gave him the wrong pass back, and it is because the Defendants were unaware that Plaintiff still had the pass showing that he had returned to his quarters that they attempted to "frame" him by falsely accusing him of disobeying a direct order (*id*. at p.8 and Scott Affidavit, ¶¶ 13, 17, 22).

4

found that Plaintiff had "complied with the order given as supported by prisoner pass of returning to unit and reappearing in state issued" (Dkt. #1, Exhibit 3(b)).

Plaintiff also alleges that defendant Williams made comments evidencing that his actions were motivated by retaliation and provided as examples the following: (a) defendant Williams allegedly stated "tell it to Judge Houk" on December 30, 2000, which Plaintiff asserts can be taken to mean the defendant Williams believed Plaintiff was unable to seek legal recourse against prison personnel[5], and (b) defendant Williams allegedly stated "this is what you get for fucking with Officer Bair", which Plaintiff asserts was a reference to Western District Case No. 95-571, a suit he filed against another prison guard, and can be taken to mean that he was being harassed for filing that suit. Defendants Cartensen, Haynes and Wilkensen filed this Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted on June 21, 2005 (Dkt. # 21). They argue that Plaintiff's complaint lacks a viable retaliation claim because (a) there is no causal connection between the protected activity and the alleged retaliatory conduct, (b) Plaintiff has sustained no injury because the misconduct tickets at issue were dismissed, (c) Plaintiff was not engaging in constitutionally protected activity because his October 8, 2000, grievance was frivolous, (d) Plaintiff's conclusory allegations are insufficient to state a claim for conspiracy and (e) Defendants are entitled to qualified immunity because, again, Plaintiff has failed to allege interference with a constitutionally protected activity and Plaintiff suffered no injury.

## II.    LEGAL STANDARD

---

[5]Apparently this reference relates to a case in which Plaintiff was banned by an Ingham County Circuit Court judge, Judge Peter D. Houk, from bringing lawsuits in Ingham County related to a Livingston County Judge (Dkt. #1, ¶ 21).

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir.2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56.

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the

6

Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).

### III. ANALYSIS

#### A. Failure to State a Claim

Accepting all well-plead factual allegations of the complaint as true and construing the complaint in the light most favorable to Plaintiff the following chronology has been pled:

- In 1995 Plaintiff initiated a lawsuit against prison guard Officer Baird in the Western District, Case No. 1:95-CV-571.

- October 8, 2000, Plaintiff filed a grievance alleging that defendant Williams threatened to file tickets against him because he did not like him. At the time of the incident giving rise to this grievance defendant Williams expressed anger over *previous* grievances and complaints Plaintiff had made against him (Dkt. #1, ¶ 9).

- November 9, 2000, defendant Williams "prods" defendant Cartensen into taking issue with Plaintiff by mentioning that Plaintiff has filed grievances against him. Defendant Cartensen responds saying "he must like getting tickets." Defendants Cartensen and Williams then speak with defendants Haynes and Wilkinson about Plaintiff's grievance writing, defendants Haynes and Wilkinson respond by saying that Plaintiff's grievance writing will cause him problems, and then they each file charges against Plaintiff that are summarily dismissed by a reviewing officer. The yard pass Plaintiff used to go to health care indicates that Plaintiff returned to his housing unit at 6:49 a.m., Plaintiff alleges to change his clothes. Defendant

7

>   Cartensen signed a statement in support of defendant Haynes ticket saying that Plaintiff never returned to the housing unit and Defendant Wilkinson signed a statement saying that he saw Plaintiff changing his clothes in the health care doorway at 0649 (the same time his pass was signed in at the housing unit).[6]

- December 31, 2000, defendant Williams makes a comment to Plaintiff regarding the Baird litigation, saying "this is what you get for fucking with Officer Baird".

### 1. Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d at 394. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court affirmed that prisoners have a constitutional right of access to the courts. Yet, such a right is contingent on whether or not a prisoner satisfies Article III standing doctrine. In order to have standing in federal courts, the alleged injury must be "distinct and palpable," *Allen v. Wright*, 468 U.S. 737, 751 (1984) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979)), and not abstract, conjectural, or hypothetical. *Id.* The injury must also be "fairly traceable" to the challenged action, and relief must be the likely result of a favorable decision. *Id.* Without a showing of actual injury, a claim will fail for lack of standing. *Lewis v. Casey*, 518 U.S. 343 (1996).

---

[6] Under these facts if this motion were considered under the Rule 56 standard there would be a question of fact regarding whether Plaintiff changed his clothes in the doorway or in the housing unit, as the Yard Pass clearly conflicts with the Defendants' reports/statements. The Defendants offered no explanation for this discrepancy in their motion or reply. Further, because Defendants have offered no additional evidence outside of the pleadings for consideration with their motion, the undersigned did not include a full Rule 56 analysis.

Neither will generalized claims of injury suffice; the injury must be concrete and particular. *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999).

Dismissal of the instant complaint is not recommended under a 12(b)(6) standard since relief could be granted if facts could be proved consistent with Plaintiff's allegations.

### a. Protected Conduct

Plaintiff was engaged in constitutionally protected activity, because an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996). Defendants are correct that this right is protected only if the grievances are not frivolous. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996). Yet, Defendants' allegation that Plaintiff has failed to allege that he was engaged in a constitutionally protected activity due to the fact that his October 8, 2000, grievance could be construed as frivolous is not persuasive.

Plaintiff stated in his complaint that he felt he was being retaliated against for the filing of multiple grievances and complaints against defendant Williams, and for filing the lawsuit against Officer Baird, and not just for filing the October 8, 2000, grievance against defendant Williams. Defendants have not alleged that Plaintiff's remaining grievances or lawsuits were frivolous and, therefore, this argument must fail.

Also, a corrections officer threatening to write a misconduct ticket on an inmate "every chance I get", could in the context of other evidence of hostility, be fairly interpreted as a threat to write false misconduct tickets. While such a threat would not necessarily be unconstitutional absent the other necessary elements of a retaliation claim, it is not frivolous to grieve an officer threatening to write false misconduct tickets that can limit an inmates' scope of freedom and delay his release

9

date.[7]

### b. Causal Connection

Defendants argument that there is no causal connection between the protected activity and the retaliatory actions must also fail under the 12(b)(6) standard, as Plaintiff has alleged that defendants Williams and Cartensen had conversations in Plaintiff's presence where they discussed the fact that they were not happy with Plaintiff's grievance writing and they then made the connection between this and Plaintiff receiving tickets. Also, defendants Williams and Cartenson allegedly conveyed the fact that Plaintiff writes grievances to defendants Wilkinson and Haynes, who responded by saying that Plaintiff's activities would cause him problems and then wrote allegedly unsubstantiated tickets against Plaintiff, which, in one case, was bolstered by a statement from defendant Cartensen. Last, the fact that defendant Williams allegedly stated "This is what you get for fucking with Officer Baird", if proven, could convince a trier of fact that his actions were undertaken in retaliation for Plaintiff's filing a lawsuit against a fellow prison employee.[8] Whether all of this can be proven remains to be seen, but it has been pled and must be taken as established on a 12(b)(6) motion.

### c. Adverse Action That Would Deter a Person of Ordinary Firmness

Defendants' argument that Plaintiff lacks standing to bring his retaliation claim because

---

[7]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *See Wolff v. McDonnell*, 418 U.S. 539, 556-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

[8]Defendants argue that the fact that defendant Williams is alleged to have made this comment in January 2001, months after the November 2000 retaliatory tickets means that it is not connected to the events. The logic of this argument is unclear, as ones' motive is often discovered after events transpire. This comment could be used as evidence of defendant Williams' motive for his previous actions.

Plaintiff demonstrated no concrete damages should be rejected. Defendants contend that the second element of a retaliation claim – adverse action – is not met for two reasons. First, because the short period of exposure to the major misconduct was trivial and caused no concrete injury, and further Plaintiff was not chilled in his pursuit of his First Amendment rights because he continued to file grievances. They argue that with nothing but a trivial adverse action and his not being deterred from further exercise of his First Amendment rights, Plaintiff was unharmed and has no standing.

First, a retaliation claim does not require that the Plaintiff, actually be dissuaded from future exercise of a constitutional right. Rather the question is whether the challenged conduct "would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396, see also *Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002). In *Thaddeus-X*, the Court distinguishes between the harm caused by a denial of prison services, and the harm caused by retaliation:

> In a retaliation claim such as this, however, the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being denied access to the courts, the prisoner is penalized for actually exercising that right... ("Because the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself.")

*Thaddeus-X,* 175 F.3d at 394 (quoting *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir.1994)).

*Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005), repeats this point and notes that unlike a First Amendment access to the courts claim that does require the plaintiff inmate having been impeded in pursuit of a legal claim, the harm or damage in a First Amendment retaliation claim is the penalty imposed on the inmate for a past exercise of a constitutional right. "Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Siggers-El*

11

*v. Barlow*, 412 F.3d at 703.

Retaliatory conduct, unlike other deprivations of civil rights, requires no further proof of injury than the retaliatory punishment. *See Crawford -El v. Britton*, 523 U.S. 574, 589 n.10 (1998)(citation omitted). While *Thaddeus-X* notes "that threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not means whereby only egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X,* 175 F.3d at 398.

*Bell v. Johnson,* 308 F.3d 594 (6th Cir. 2002), notes a number of retaliatory acts that would satisfies the adverse action prong of *Thaddeus-X* :

> [W]e note that a number of cases from other circuits have held that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim. *See Penrod v. Zavaras,* 94 F.3d 1399, 1404 (10th Cir.1996) (reversing grant of summary judgment to defendants on inmate's claim that guards conducted harassing cell searches, seized legal materials, refused to provide inmate with hygiene items, and transferred inmate to segregation in retaliation for suit against prison officials); *Green v. Johnson,* 977 F.2d 1383, 1389-91 (10th Cir.1992) (holding that inmate's allegation that guards destroyed his legal materials in retaliation for his filing of suits and grievances stated a cognizable First Amendment claim); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) (same); *Hall v. Sutton,* 755 F.2d 786, 787-88 (11th Cir.1985 (holding that inmate alleged sufficient facts to state a claim of First Amendment retaliation based upon the alleged confiscation of his tennis shoes in retaliation for a prior lawsuit against prison officials); *see also Zimmerman v. Tribble,* 226 F.3d 568, 573-74 (7th Cir.2000) (reversing dismissal of claim that prison law librarian repeatedly denied prisoner access to the prison law library in retaliation for protected conduct). In *Wright,* the Eleventh Circuit determined that a prisoner had alleged sufficient injury to state a First Amendment retaliation claim by asserting that correctional officers conducted a retaliatory search of his cell and that "[i]n the course of the search, [the defendants] destroyed seven of [the plaintiff's] photographs and some legal papers .... [and] also seized legal pleadings concerning [the plaintiff's] challenge to his conviction and a law book," which were never returned. *Wright,* 795 F.2d at 965. The court concluded that the plaintiff had "sufficiently alleged facts bringing actions that might not otherwise be offensive to the Constitution, such as the search itself or the

> confiscation and destruction of [legal and] nonlegal materials ..., within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." *Id.* at 968. Although *Wright* did not explicitly consider the "ordinary firmness" question, the court applied essentially the same well-established principles of First Amendment retaliation law that formed the basis for this court's decision in *Thaddeus-X.*
>
> In addition, we have previously suggested in dicta that a retaliatory cell search and seizure of an inmate's legal documents satisfies the adverse action prong of the *Thaddeus-X* test. *Walker v. Bain,* 257 F.3d 660, 664 (6th Cir.2001), *cert. denied,* 535 U.S. 1095, 122 S.Ct. 2291, 152 L.Ed.2d 1050 (2002). In *Walker,* a jury in a civil trial concerning an inmate's First Amendment retaliation claim returned special interrogatories finding that "both defendants improperly confiscated and removed [ the plaintiff's] personal papers from his cell, that [the plaintiff's] previous filing of grievances and lawsuits was a substantial and motivating factor behind this conduct, but that the defendants' actions did not constitute an egregious abuse of power or otherwise shock the conscience." *Id.* at 672. A verdict initially was entered for the defendants based upon the jury's conclusion that the retaliatory acts were not conscience-shocking.

*Bell,* 308 F.3d at 604-05.

In the present case a jury could find that writing an unsubstantiated major ticket in retaliation for the inmate filing a grievance against a fellow officer is not an "inconsequential action" even if the inmate is able to avoid the exposure and penalties of a major misconduct in short order. In *Thaddeus-X* the majority of the Sixth Circuit did not uphold a summary judgment over when an inmate being served cold food constituted "adverse action" sufficient to deter a person of ordinary firmness, but rather remanded to the district court for further consideration. While this court ultimately determined that "cold food" was not sufficient, a major misconduct ticket with potential loss of privileges and an extension of an inmates' release date, is potentially far more consequential. Accordingly, this Court should not grant a 12(b)(6) motion for failure to state a claim, nor summary disposition on the issue of whether the conduct of the Defendants meets the adverse action standard of *Thaddeus-X* notwithstanding Plaintiff's ability to have this the ticket dismissed quickly.

On the issue of harm, Defendants are correct that 42 U.S.C. § 1997e(e) does not allow prisoners to recover for emotional harm in the absence of physical injury, which is not alleged to have occured here. This Court in a thoughtful opinion citing the conflicting authorities on this issue, as well as *Memphis Community School Dist. v. Stachura,* 477 U.S. 299 (1986) which denies § 1983 damages for "the abstract value of a constitutional right," decided that an inmate in a retaliation claim could not receive damages for mental and emotional injuries but could seek to recover nominal, compensatory and, if appropriate, punitive damages. *Meade v. Plummer*, 344 F.Supp.2d 569 (E.D. Mich. 2004). Here it does not appear that compensatory damages will be available, but the final resolution of the jury instructions on damages will be left to the trial judge.

**2. Conspiracy**

As Defendants correctly point out in their motion, the civil conspiracy standard is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *See Hobson v. Wilson*, 737 F.2d 1, 51-52 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *Hampton v. Hanrahan*, 600 F.2d 600, 620- 21 (7th Cir.1979), *cert. denied in part, granted in part and rev'd on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

*Hooks v. Hooks*, 771 F.2d 935 (1985), 943 -944 (6th Cir. 1985).

Defendants argue that Plaintiff has failed to state a claim for civil conspiracy because "there is no evidence beyond Plaintiff's speculative allegations that Defendants acted purposely and in concert with each other to harm Plaintiff...." (Dkt. #21, p. 17). This is not the standard for a 12(b)(6) motion, which requires only that the reviewing court accept all well-pled allegations as true and

14

dismiss only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Here, Plaintiff has alleged to have witnessed one in-person conversation and overheard two telephone conversations wherein his grievance writing activities were discussed amongst the Defendants, he also alleges to have heard each defendant express discontent with his grievance writing and make related comments, such as "he must like getting tickets" and the grievance writing will cause Plaintiff problems. He also alleges that the Defendants then issued false major misconduct tickets against him and/or wrote false statements in support of each others' false major misconduct tickets. This is sufficient to allege a conspiracy in that Plaintiff has alleged that four people have acted in concert to issue false major misconduct tickets against him in retaliation for Plaintiff's engaging in a protected activity, writing grievances.

### 3. Qualified Immunity

Defendants based their claim to qualified immunity upon their arguments that Plaintiff had not sufficiently pled a retaliation or conspiracy claim and that Plaintiff had not suffered a cognizable injury. For the reasons stated above, these arguments fail. Therefore, Defendants argument for qualified immunity also must fail.

### III. RECOMMENDATION

For the reasons stated above, it is Recommended that Defendants' Motion to Dismiss be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

15

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 25, 2006                              s/Steven D. Pepe
Ann Arbor, Michigan                                  United States Magistrate Judge




Certificate of Service

I hereby certify that a copy of this Report and Recommendation was served upon the Plaintiff and attorney(s) of record by electronic means or U. S. Mail on January 25, 2006.

                                                     s/William J. Barkholz
                                                     Courtroom Deputy Clerk