DAVID SCOTT, #191939

                Plaintiff,

vs.

CARTENSEN, G. WILLIAMS,
T. HAYNES AND M. WILKENSEN,

                Defendants.

_____/

Case No. 03-75069

District Judge Arthur J. Tarnow
Magistrate Judge Steven D. Pepe

### REPORT AND RECOMMENDATION REGARDING
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. # 67)

On December 12, 2003, Plaintiff, a prisoner incarcerated in the Michigan Department of

Corrections (MDOC), filed a civil rights claim against RUO Cartensen, G. Williams, T. Haynes

and M. Wilkensen, all of whom were employed as corrections officers by MDOC at Saginaw

Regional Correctional Facility (SRF) during the relevant time period (Dkt. #1). On June 21,

2005, Defendants Cartensen, Haynes and Wilkensen filed a motion to dismiss for failure to state

a claim (Dkt. # 21) and Plaintiff responded on August 2, 2005 (Dkt. # 27).[1] Plaintiff was

released from custody in August 2005 (Dkt. #29). On January 1, 2006, a Report and

Recommendation recommended denial of Defendants' motion to dismiss (Dkt. # 39). On March

31, 2006, District Judge Arthur Tarnow issued an Order adopting this Report and

---

[1] Substitute service was authorized and made on Defendant G. Williams who has not appeared nor requested representation by the Michigan Attorney General. A Clerk's default has been entered against him (Dkt. # 66). A November 2, 2007, Report and Recommendation notes that jurisdiction over Defendant G. Williams exists, and recommends deferring entry of a default judgment until a hearing on damages has occurred (Dkt. # 74).

Recommendation (Dkt. # 45).  On October 12, 2007, Defendants Cartensen,  Haynes and

Wilkensen filed a motion for summary judgment (Dkt. # 67).  Plaintiff responded to the motion

on October 16, 2007 (Dkt. # 69).  For the reasons discussed below, **IT IS RECOMMENDED** that

Defendants' motion be **DENIED**.

## I.      BACKGROUND:

Plaintiff's complaint alleges that the Defendants have filed false major misconduct

charges against him in retaliation for his filing lawsuits and grievances.  Specifically, they

retaliated against him due to his (a) filing Western District Case No. 95-571 against another

prison officer (Dkt. #1, ¶¶ 22, 26), and (b) filing grievances and complaints against Defendant

Williams (Dkt. #1, ¶¶ 9, 14, 26).

Plaintiff filed an October 8, 2000, grievance against Defendant Williams for what he

perceived as "intentionally provoking hostility in prison personnel against [him] and for

threatening to subject [him] to false misconduct charges" (Dkt. #1, ¶ 9).  In connection with this

incident Defendant Williams expressed anger over "grievances and complaints previously made

and filed against him by Plaintiff" and that Defendant Williams' "words, statements and threats

were in reaction" (*id.*).  In the October 8, 2000, *Step I Grievance Form* related to this incident

Plaintiff alleges that Defendant Williams stated to Plaintiff in front of other prison staff, "I do not

care for you and intend on writing a ticket against you every chance I get" (Dkt. #1, Exhibit

1(a)).[2]

_____

[2]Plaintiff attached as exhibits to his complaint a number of other grievances he had
attempted to file against Defendant Williams while he was on Modified Access Status.  The
proposed grievances are largely illegible, but the gist of Plaintiff's issues can be gleaned from
the attached MDOC responses.  On January 11, 2001, MDOC denied Plaintiff access to file two
separate grievances against Defendant Williams for (a) harassing him and laughing and bragging
about it and (b) saying "'tell Judge Houke about it' to inflame, degrade and embarrass him"

Plaintiff alleges that on November 9, 2000, Defendant Williams "prodded" Defendant

Cartensen to take issue with the fact that Plaintiff was wearing his personal sweat pants to a

health services appointment (Dkt. #1, ¶ 13). Plaintiff alleges that Defendant Williams

complained to Defendant Cartensen about the grievances Plaintiff had filed against Defendant

Williams and suggested that Defendant Cartensen could also be subject to being grieved by

Plaintiff, to which Defendant Cartensen responded "he must like receiving tickets" (Dkt. #1, ¶

14). Plaintiff alleges that this statement can be taken to mean that "prison staff issue false tickets

against prisoners in retaliation for utilizing the grievance process"(Dkt. #1, ¶ 14).

Plaintiff alleges to have overheard telephone conversations wherein "Defendant

Cartensen and Williams conveyed complaints regarding Plaintiffs' grievance activities to

Defendant Hayes and Wilkensen who in response both made references to Plaintiff that his

grievances activities have and will continue to cause him 'problems'" (*id.* at ¶ 15).[3] Plaintiff

(Exhibit 6(b)). On January 29, 2001, Plaintiff was denied access to file five separate grievances against Defendant Williams for (a) opening and slamming Plaintiff's door on three occasions in January 2001 (two grievances), (b) using profanity in front of another prisoner (apparently not Plaintiff), (c) stating "This is what you get for fucking with Officer Bair", and (d) ordering him to wear his state issued clothing to the control center (Exhibit 7(b)-(c)).

In his response to Defendants' motion for dismissal Plaintiff referred to further grievances and proposed grievances he had filed against Defendant Williams (Dkt. # 27). On September 30, 2000, Plaintiff filed a grievance alleging that Defendant Williams told others that Plaintiff planned on killing people when he was released from prison (*Id.*, Exhibit 1). On October 16, 2000, Plaintiff filed a grievance alleging that Defendant Williams had interrupted a conversation Plaintiff was having and called him a liar "in a loud and angry voice" which Plaintiff alleged made him feel Defendant Williams "was preparing to physically assault" him (Exhibit 2). Plaintiff also filed proposed grievances against Defendant Williams regarding (a) screaming at another officer, (b) screaming across the base at Plaintiff for being out of place, and (c) denying Plaintiff the use of a stapler (Exhibit 3(b)-(d)).

[3]Defendants take issue with this allegation in that they interpreted it to mean that Plaintiff was alleging to have heard both ends of telephone conversations between Defendants (Dkt. # 21, p.5). Plaintiff explains in his response to Defendants' motion to dismiss that this allegation should be taken to mean that he heard Defendant Cartensen speaking to Defendant Haynes on the telephone and Defendant Williams speaking to Defendant Wilkenson on the telephone, both

alleges that on this same date Defendant Wilkensen  falsely charged him with being out of place when he was eating breakfast in the mess-hall after his health services appointment. Defendant Wilkinson saw Plaintiff eating breakfast at 6:55 a.m., when his unit was not called to eat until 07:20 hours (Dkt. #1, Exhibit 3(a)).

Also on November 9, 2000,  Defendant Haynes charged him with disobeying an order to leave the infirmary and return to the living unit to change out of the sweat pants (*id.* at ¶ 11-13,16).[4]  All Defendants provided statements in support of this violation. Defendant Haynes indicated that he told Plaintiff to return to his living quarters to change his clothes, and that at 6:49 a.m. he returned to health care wearing blue shorts and carrying his sweat pants, and that Defendant Cartensen had informed him that Plaintiff had not returned to his living quarters to change his clothes as Defendant Haynes had ordered (Dkt. #1, Exhibit 3(b)).  Defendant Cartensen wrote a statement in support of Defendant Haynes' report in which he indicated that Plaintiff had not returned from health care to change his clothes as Defendant Haynes had ordered (*id.* at Exhibit 3(c), *see also*, Exhibit 3(f)).  Defendant Wilkinson also wrote a statement in support of Defendant Haynes' report, claiming that he saw Plaintiff change his clothes in the doorway of the health care entrance at 6:47  a.m. (*id.* at Exhibit 3(e)).  The yard pass from his housing unit for his health care visit was issued at 6:25 a.m., and shows Plaintiff signed in at health care at 6:33 a.m., was released to his housing unit at 6:47 a.m. and signed back in at his

---

of which he was able to surmise because the caller identified the person called by name, and that later that same day Defendants Haynes and Wilkenson each told Plaintiff that his grievance activities would cause him problems (Dkt. #27 at Scott Affidavit, ¶¶ 18-20).

    [4] Defendant Cartensen also wrote a misconduct ticket against Plaintiff on November 9, 2000, for failing to obey an order to change out of sweat pants before leaving the housing unit in the first instance, but Plaintiff has not contested the validity of that ticket in his allegations (Dkt. #1, Exhibit 8).

housing unit at 6:49 a.m. (*id.* at Exhibit 3(d)).[5]

Plaintiff alleges that these charges were proved to be false on November 10, 2000, when they were dismissed "on the basis that no such offenses occurred and that the statements and allegations giving rise to same were and are false" (*id.* at 18). The reviewing officer, Sergeant Stoltenberg, dismissed the November 9 Wilkinson out-of-place ticket because he found that Plaintiff had received *verbal* permission from Defendant Haynes to eat in the mess hall after his health services appointment (*id.* at Exhibit 3(a)). Sergeant Stoltenberg dismissed the November 9 Haynes ticket regarding the failure to obey a direct order because he found that Plaintiff had "complied with the order given as supported by prisoner pass of returning to unit and reappearing in state issued" (Dkt. #1, Exhibit 3(b)).

Plaintiff, who was on Modified Access Status for filing grievances, requested permission from the Grievance Coordinator to file grievances against Defendants Haynes, Cartensen and Wilkinson for their allegedly retaliatory actions on November 9. (Dkt. 67,Exh. 13-14). The grievance coordinator denied this on November 21, 2000 (*Id.,* Exh. 15).[6]

Defendants Cartensen, Haynes and Wilkensen filed this Motion For Summary Judgment on October 12, 2007 (Dkt. # 67). They argue that Plaintiff's complaints against Defendants

---

[5] In his response to Defendants' motion to dismiss Plaintiff alleges that he was signed in at 6:49 a.m. at his housing unit by Defendant Cartensen (Dkt. # 27, p. 3), that Defendant Cartensen asked for the yard pass back from Plaintiff when Plaintiff returned from health care the second time, that Plaintiff inadvertently gave him the wrong pass back, and it is because the Defendants were unaware that Plaintiff still had the pass showing that he had returned to his quarters that they attempted to "frame" him by falsely accusing him of disobeying a direct order (*id.* at p.8 and Scott Affidavit, ¶¶ 13, 17, 22).

[6] The Grievance Coordinator states the requested grievances involved Defendants Haynes and Wilkinson who wrote the tickets, but both of Plaintiff's requests also asserts wrongdoing by Defendant Cartensen

Cartensen, Haynes and Wilkinson should be dismissed because Plaintiff filed his complaint after the statute of limitations had expired for suits brought pursuant to 42 U.S.C. § 1983. *Id.* at 4. Defendants assert that the last alleged act of retaliation of conspiracy occurred on November 9, 2000, and Plaintiff fully exhausted his administrative remedies on November 21, 2000, when the Grievance Coordinator denied his request to file grievances against Defendants. *Id.* at 5-6.

With regard to the statute of limitations, Defendants assert that the clock began running on November 21, 2000. As such, Plaintiff had three years from that date to file suit against Defendants Cartensen, Haynes and Wilkinson on the Haynes and Wilkinson tickets that were dismissed.[7] Plaintiff filed his complaint on December 18, 2003 (Dkt. # 3) which was more than three years after November 21, 2000.

Defendants further state that Plaintiff "will no doubt try and argue that the allegations in paragraph 22 fall under the continuing violations doctrine," but "this doctrine does not apply in this case" (Dkt. # 67, p. 5) (internal quotes removed). Defendants further argue, that even if the continuing violations doctrine does apply, they are still entitled to summary judgment as the doctrine "may not be invoked to allow recovery for acts that occurred outside the filing period." *Id.* (quoting *Sharpe v. Cureton*, 319 F. 3d 256, 267 (6th Cir. 2003)).

## II. Legal Analysis:

### A.     Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court

---

[7] Defendants also assert that Plaintiff cannot proceed on th4 Defendant Carstensen misconduct of November 9, 2000, because that misconduct was upheld. Yet as indicated in footnote 4, Plaintiff has not contested the validity of that Carstensen ticket in his allegations.

has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).

### B.  Statute of Limitations:

Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Drake v. City of Detroit*, 2008 WL 482283, *3 (6th Cir.  2008) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985))).  The Sixth Circuit has held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims.  Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004)

## III. Factual Analysis:

The parties agree that Michigan's three year statute of limitations applies to Plaintiff's § 1983 claims.  MCL 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986).  While not raised by Plaintiff, Defendants did not assert the affirmative defense of the statute of limitations in their earlier Motion to Dismiss or in their Answer.

On June 21, 2005, Defendants Cartensen, Haynes and Wilkensen filed a motion to dismiss for failure to state a claim (Dkt. # 21). This did not raise the statute of limitations. After this motion was denied on March 31, 2006, Defendants Cartensen, Haynes and Wilkensen on April 17, 2006, filed an Answer to Defendant's Complaint (Dkt. # 47). Nowhere in this Answer is the affirmative defense of statute of limitations plead. Federal Rule of Civil Procedure 8(c) notes that "in pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations." FED. R. CIV. P. 8(c).

"It is a frequently stated proposition of virtually universal acceptance by federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case." 5 WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1278 (p. 644-45). *See* AMJUR PLEADING § 291 "Unlike lack of subject matter jurisdiction, other affirmative defenses may be waived and generally are waived by the failure to raise them in the pleadings, unless the issue is tried with the consent of the parties." *See also*, 5 FEDERAL PRACTICE AND PROCEDURE § 1270 "Rule 8(c), by requiring the defendant to plead any of the listed affirmative defenses and any other matters of avoidance that it wishes to raise or risk waiving them, also serves the purpose of giving the opposing party notice of the defenses that are being put in issue and preserves the defendant's opportunity to argue why the claim for relief should not be barred completely."

This Circuit has long held that "the running of the statute of limitations and laches are affirmative defenses, and such defenses must be set forth in the pleadings. The Defendants in their answers did not plead the statute of limitations as a defense." *U.S. v. Masonry Contractors Ass'n of Memphis, Inc.*, 497 F.2d 871, 877 (6th Cir. 1974). *See Senter v. General Motors Corp.*, 532 F.2d 511, 530 (6th Cir. 1976) (The statute of limitations is an affirmative defense under Rule

8(c) of the Federal Rules of Civil Procedure and must be expressly raised or else it is waived.);

*Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir. 2005) (An assertion of

a statute of limitations is an affirmative defense that must be properly raised.).  Accordingly, in

failing to assert a statute of limitations defense in neither their initial Motion to Dismiss nor in

their subsequent Answer, Defendants have waived that defense.

## IV.    Conclusion:

Accordingly, for the reasons stated above, **IT IS RECOMMENDED** that Defendants' motion

for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within ten (10) days of service of a copy

hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S.

140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but

fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir.

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.

Dated:March 7, 2008                          s/Steven D. Pepe
Ann Arbor, Michigan                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Report and Recommendation* was served on the

attorneys and/or parties of record by electronic means or U.S. Mail on March 7, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298