UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCOTT, #191939

                 Plaintiff,                 Case No. 03-75069

vs.

                                    District Judge Arthur J. Tarnow
                                    Magistrate Judge Steven D. Pepe

CARTENSEN, G. WILLIAMS,
T. HAYNES AND M. WILKINSON,

                 Defendants.

_____/


**REPORT AND RECOMMENDATION REGARDING**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. # 67)**


On December 12, 2003, Plaintiff, a prisoner incarcerated in the Michigan Department of

Corrections (MDOC), filed a civil rights claim against RUO Cartensen, G. Williams, T. Haynes

and M. Wilkinson, all of whom were employed as corrections officers by MDOC at Saginaw

Regional Correctional Facility ("SRF") during the relevant time period (Dkt. #1). On June 21,

2005, Defendants Cartensen, Haynes and Wilkinson filed a motion to dismiss for failure to state

a claim (Dkt. # 21) and Plaintiff responded on August 2, 2005 (Dkt. # 27).[1] Plaintiff was

released from custody in August 2005 (Dkt. #29). On January 1, 2006, a Report and

Recommendation recommended denial of Defendants' motion to dismiss (Dkt. # 39). On March

31, 2006, District Judge Arthur Tarnow issued an Order adopting this Report and

---

[1] Substitute service was authorized and made on Defendant G. Williams who has not
appeared nor requested representation by the Michigan Attorney General. A Clerk's default has
been entered against him (Dkt. # 66). A November 2, 2007, Report and Recommendation notes
that jurisdiction over Defendant G. Williams exists, and recommends deferring entry of a default
judgment until a hearing on damages has occurred (Dkt. # 74).

Recommendation (Dkt. # 45). On October 12, 2007, Defendants Cartensen, Haynes and

Wilkinson filed a motion for summary judgment (Dkt. # 67). Plaintiff responded to the motion

on October 16, 2007 (Dkt. # 69). For the reasons discussed below, **IT IS RECOMMENDED** that

Defendants' motion be **GRANTED**.

**I.      BACKGROUND**:

Plaintiff's complaint alleges that the Defendants have filed false major misconduct

charges against him in retaliation for his filing lawsuits and grievances. Specifically, they

retaliated against him due to his (a) filing Western District of Michigan Case No. 95-571 against

another prison officer (Dkt. #1, ¶¶ 22, 26), and (b) filing grievances and complaints against

Defendant Williams (Dkt. #1, ¶¶ 9, 14, 26).

Plaintiff filed an October 8, 2000, grievance against Defendant Williams for what he

perceived as "intentionally provoking hostility in prison personnel against [him] and for

threatening to subject [him] to false misconduct charges" (Dkt. #1, ¶ 9). In connection with this

incident Defendant Williams expressed anger over "grievances and complaints previously made

and filed against him by Plaintiff" and that Defendant Williams' "words, statements and threats

were in reaction." *Id.* In the October 8, 2000, *Step I Grievance Form* related to this incident

Plaintiff alleges that Defendant Williams stated to Plaintiff in front of other prison staff, "I do not

care for you and intend on writing a ticket against you every chance I get."[2] *Id.* at 1(a).

_____

[2]Plaintiff attached as exhibits to his complaint a number of other grievances he had
attempted to file against Defendant Williams while he was on Modified Access Status. The
proposed grievances are largely illegible, but the gist of Plaintiff's issues can be gleaned from
the attached MDOC responses. On January 11, 2001, MDOC denied Plaintiff access to file two
separate grievances against Defendant Williams for (a) harassing him and laughing and bragging
about it and (b) saying "'tell Judge Houke about it' to inflame, degrade and embarrass him"

Plaintiff alleges that on November 9, 2000, Defendant Williams "prodded" Defendant

Cartensen to take issue with the fact that Plaintiff was wearing his personal sweat pants to a

health services appointment. *Id*. at ¶ 13. Plaintiff alleges that Defendant Williams complained

to Defendant Cartensen about the grievances Plaintiff had filed against Defendant Williams and

suggested that Defendant Cartensen could also be subject to being grieved by Plaintiff, to which

Defendant Cartensen responded "he must like receiving tickets." *Id*. at ¶ 14. Plaintiff alleges

that this statement can be taken to mean that "prison staff issue false tickets against prisoners in

retaliation for utilizing the grievance process." *Id*. at ¶ 14.

Defendant Cartensen's Major Misconduct Report stated that Defendant reported for a

health care call out "wearing personal sweat pants" and was told directly by Defendant

Cartensen that he "cannot go to health care in sweat pants, go put on state issued pants" (Dkt. #

67, Ex. 10). Plaintiff replied "where is that written," left the unit, was told a second time to

change and went to the health clinic after refusing to change. *Id*. A November 15, 2000, Major

Misconduct Hearing upheld Defendant Cartensen's Report noting that

---

(Exhibit 6(b)). On January 29, 2001, Plaintiff was denied access to file five separate grievances against Defendant Williams for (a) opening and slamming Plaintiff's door on three occasions in January 2001 (two grievances), (b) using profanity in front of another prisoner (apparently not Plaintiff), (c) stating "This is what you get for fucking with Officer Bair", and (d) ordering him to wear his state issued clothing to the control center (Exhibit 7(b)-(c)).

In his response to Defendants' motion for dismissal Plaintiff referred to further grievances and proposed grievances he had filed against Defendant Williams (Dkt. # 27). On September 30, 2000, Plaintiff filed a grievance alleging that Defendant Williams told others that Plaintiff planned on killing people when he was released from prison (*Id.*, Exhibit 1). On October 16, 2000, Plaintiff filed a grievance alleging that Defendant Williams had interrupted a conversation Plaintiff was having and called him a liar "in a loud and angry voice" which Plaintiff alleged made him feel Defendant Williams "was preparing to physically assault" him (Exhibit 2). Plaintiff also filed proposed grievances against Defendant Williams regarding (a) screaming at another officer, (b) screaming across the base at Plaintiff for being out of place, and (c) denying Plaintiff the use of a stapler (Exhibit 3(b)-(d)).

hearing officer finds prisoner was told not to go to health care in sweat pants, he asked where it was written and went to health care wearing the sweat pants. Findings based on two staff reporting this, giving consistent, detailed statements. Also, prisoner admits he was told about restrictions on wearing sweat pants, and then asked to see it in writing, and this strongly indicates he was informed he could not go with sweat pants, contradicting his brief, unconvincing statement at hearing.

*Id*. at Ex. 11.

Plaintiff filed a request for rehearing on December 11, 2000. *Id*. at Ex. 12. This request

was denied on April 12, 2001, by the Hearing Administrator who noted that

the hearing officer's factual findings cannot be overturned on appeal where there is competent, material and substantial evidence on the record from which the hearing officer could reasonably reach the decision. The facts found by the hearing officer are supported by the record and in turn fulfill the elements of the charge as defined in PD 03.03.105.[3] Although you disagree with the determination, you have not established substantial error on the part of the hearing officer or other basis for the granting of relief. Disagreement is not sufficient to establish grounds for rehearing. Your Request for Rehearing is denied.

*Id*. at Ex. 12.

Plaintiff alleges to have overheard telephone conversations wherein "Defendant

Cartensen and Williams conveyed complaints regarding Plaintiffs' grievance activities to

Defendant Hayes and Wilkinson who in response both made references to Plaintiff that his

grievances activities have and will continue to cause him 'problems.'"[4] *Id*. at ¶ 15. Plaintiff

---

[3] Policy Directive 03.03.105 was issued on March 19, 2001, and is entitled "Prisoner Discipline."

[4] Defendants take issue with this allegation in that they interpreted it to mean that Plaintiff was alleging to have heard both ends of telephone conversations between Defendants (Dkt. # 21, p.5). Plaintiff explains in his response to Defendants' motion to dismiss that this allegation

alleges that on this same date Defendant Wilkinson falsely charged him with being out of place when he was eating breakfast in the mess-hall after his health services appointment. Defendant Wilkinson saw Plaintiff eating breakfast at 6:55 a.m., when his unit was not called to eat until 07:20 hours.  *Id*. at Ex. 3(a).

Also on November 9, 2000,  Defendant Haynes charged him with disobeying an order to leave the infirmary and return to the living unit to change out of the sweat pants.[5]  *Id.* at ¶ 11-13,16).  All Defendants provided statements in support of this violation.  Defendant Haynes indicated that he told Plaintiff to return to his living quarters to change his clothes, and that at 6:49 a.m. he returned to health care wearing blue shorts and carrying his sweat pants, and that Defendant Cartensen had informed him that Plaintiff had not returned to his living quarters to change his clothes as Defendant Haynes had ordered. *Id*. at Ex. 3(b).  Defendant Cartensen wrote a statement in support of Defendant Haynes' report in which he indicated that Plaintiff had not returned from health care to change his clothes as Defendant Haynes had ordered.  *Id.* at Ex. 3(c), *see also*, Ex. 3(f).  Defendant Wilkinson also wrote a statement in support of Defendant Haynes' report, claiming that he saw Plaintiff change his clothes in the doorway of the health care entrance at 6:47  a.m..  *Id*. at Ex. 3(e).  The yard pass from his housing unit for his health

_____

should be taken to mean that he heard Defendant Cartensen speaking to Defendant Haynes on the telephone and Defendant Williams speaking to Defendant Wilkenson on the telephone, both of which he was able to surmise because the caller identified the person called by name, and that, as additional circumstantial verification, later the same day Defendants Haynes and Wilkenson each told Plaintiff that his grievance activities would cause him problems (Dkt. #27 at Scott Affidavit, ¶¶ 18-20).

[5] Defendant Cartensen also wrote a misconduct ticket against Plaintiff on November 9, 2000, for failing to obey an order to change out of sweat pants before leaving the housing unit in the first instance, but Plaintiff has not contested the validity of that ticket in his allegations (Dkt. #1, Exhibit 8).

care visit was issued at 6:25 a.m., and shows Plaintiff signed in at health care at 6:33 a.m., was

released to his housing unit at 6:47 a.m. and signed back in at his housing unit at 6:49 a.m..[6] *Id.*

at Ex. 3(d).

Plaintiff alleges that these charges filed by Defendants Haynes and Wilkinson were

proved to be false on November 10, 2000, when they were dismissed "on the basis that no such

offenses occurred and that the statements and allegations giving rise to same were and are false."

*Id.* at 18.  The reviewing officer, Sergeant Stoltenberg, dismissed the November 9 Wilkinson

out-of-place ticket because he found that Plaintiff had received *verbal* permission from

Defendant Haynes to eat in the mess hall after his health services appointment.  *Id.* at Ex. 3(a).

Sergeant Stoltenberg dismissed the November 9 Haynes ticket regarding the failure to obey a

direct order because he found that Plaintiff had "complied with the order given as supported by

prisoner pass of returning to unit and reappearing in state issued." *Id.* at Ex. 3(b).

Plaintiff, who was on Modified Access Status for filing grievances, requested permission

from the Grievance Coordinator to file grievances against Defendants Haynes, Cartensen and

Wilkinson for their allegedly retaliatory actions on November 9 (Dkt. 67, Exs. 13-14).  The

grievance coordinator denied this on November 21, 2000, noting that "the appropriate action"

was taken by Sergeant Stoltenberg, and that Plaintiff's allegations "demean staff character and

---

[6] In his response to Defendants' motion to dismiss Plaintiff alleges that he was signed in at 6:49 a.m. at his housing unit by Defendant Cartensen (Dkt. # 27, p. 3), that Defendant Cartensen  asked for the yard pass back from Plaintiff when Plaintiff returned from health care the second time, that Plaintiff inadvertently gave him the wrong pass back, and it is because the Defendants were unaware that Plaintiff still had the pass showing that he had returned to his quarters that they attempted to "frame" him by falsely accusing him of disobeying a direct order. *Id*. at p.8 and Scott Affidavit, ¶¶ 13, 17, 22.

are without merit." *Id. at* Ex. 15.[7]

Defendants Cartensen, Haynes and Wilkinson filed this Motion For Summary Judgment
on October 12, 2007, arguing that Plaintiff's complaints against Defendants Cartensen, Haynes
and Wilkinson should be dismissed because Plaintiff filed his complaint after the statute of
limitations had expired for suits brought pursuant to 42 U.S.C. § 1983 (Dkt. # 67, p.4).
Defendants assert that the last alleged act of retaliation or conspiracy occurred on November 9,
2000, and Plaintiff fully exhausted his administrative remedies on November 21, 2000, when the
Grievance Coordinator denied his request to file grievances against Defendants. *Id.* at 5-6.[8]

Thus Defendants assert that the statute of limitations began running on November 21,
2000. Plaintiff had three years from that date (or until November 21, 2003) to file suit against
Defendants Cartensen, Haynes and Wilkinson regarding the Haynes and Wilkinson tickets that
were dismissed.[9] Plaintiff filed his complaint on December 18, 2003 (Dkt. # 3), which was more
than three years after November 21, 2000.

Defendants state that Plaintiff "will no doubt try and argue that the allegations in
paragraph 22 fall under the continuing violations doctrine," but "this doctrine does not apply in

---

[7] The Grievance Coordinator states the requested grievances involved Defendants
Haynes and Wilkinson who wrote the tickets, but both of Plaintiff's requests also asserts
wrongdoing by Defendant Cartensen

[8] Defendant Carstensen issued Scott a major misconduct violation on November 9, 2000,
for Disobeying a Direct Order. Hearing Officer Gary Kuiper found Scott guilty of disobeying a
direct order on November 15, 2000. Scott subsequently sought a rehearing of Hearing Officer
Kuiper's decision which Richard Stapleton disapproved on April 12, 2001.

[9] Defendants also assert that Plaintiff cannot proceed on the Defendant Carstensen's
November 9, 2000, misconduct ticket because the ticket was upheld. Yet, as indicated in
footnote 4, Plaintiff has not contested the validity of that Carstensen ticket in his allegations.

this case" (Dkt. # 67, p. 5) (internal quotes removed). Defendants further argue, that even if the continuing violations doctrine does apply, they are still entitled to summary judgment because the doctrine "may not be invoked to allow recovery for acts that occurred outside the filing period." *Id.* (quoting *Sharpe v. Cureton*, 319 F. 3d 256, 267 (6th Cir. 2003)).

## II. Legal Analysis:

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).

### B. Statute of Limitations:

Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Drake v. City of Detroit*, 2008 WL 482283, *3 (6th Cir. 2008) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir.

2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985))).   The Sixth Circuit has held that

the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the

state's three-year limitations period for personal injury claims.  Mich. Comp. Laws §

600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004).  The parties

agree that Michigan's three year statute of limitations applies to Plaintiff's § 1983 claims.

### III. Factual Analysis:

On June 21, 2005, Defendants Cartensen,  Haynes and Wilkinson filed a motion to

dismiss for failure to state a claim (Dkt. # 21).  This motion to dismiss did not raise a statute of

limitations defense.  After this motion was denied on March 31, 2006, Defendants Cartensen,

Haynes and Wilkinson on April 17, 2006, filed an Answer to Defendant's Complaint (Dkt. # 47).

On the same day Defendants filed "Affirmative Defenses" raising the statute of

limitations defense (Dkt. # 49).  A "Corrected"  Answer and Affirmative Defense was filed

together on July 27, 2006 (Dkt. # 53).

Federal Rule of Civil Procedure 8(c) notes that "in pleading to a preceding pleading, a

party shall set forth affirmatively . . . statute of limitations."  FED. R. CIV. P. 8(c).  "It is a

frequently stated proposition of virtually universal acceptance by federal courts that a failure to

plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that

defense and its exclusion from the case."  5 WRIGHT & MILLER FEDERAL PRACTICE AND

PROCEDURE: CIVIL 3d § 1278 (p. 644-45).  *See* AMJUR PLEADING § 291  "Unlike lack of

subject matter jurisdiction, other affirmative defenses may be waived and generally are waived

by the failure to raise them in the pleadings, unless the issue is tried with the consent of the

parties."  Because Defendants' earlier motion to dismiss is not a "pleading" under Rule 7(a), it is

9

not covered by Rule 8(c)'s requirement that it include the statute of limitations defense. By asserting a statute of limitations defense in their affirmative defenses filed with their answer, Defendants have not waived that defense. They argue that Plaintiff fully exhausted his administrative remedies on November 21, 2000, when the Grievance Coordinator denied his request to file grievances against Defendants. *Id.* at 5-6.

Plaintiff responds that he "exhausted his available administrative remedies when his appeals from the decisions finding him guilty of major misconduct violations were denied on April 12, 2001" (Dkt. # 70, p. 2). Based on this, Plaintiff argues that the filing of his complaint on December 18, 2003, was within the applicable statute of limitations. Yet, Plaintiff refers to the ticket issued by Defendant Cartensen which he is not challenging in this action, not the two tickets by Defendants Haynes and Wilkinson he prevailed on which are the basis of his present complaint.[10]

It is significant that the present claim against Defendants Cartensen, Haynes and Wilkinson is not based on the November 9, 2000, Cartensen ticket, but rather the two tickets also written on November 9, 2000, by Defendants Haynes and Wilkinson.

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). While *Jones v. Bock*, 127 S. Ct.

---

[10] As noted above, on November 15, 2000, a hearing officer found Plaintiff guilty of disobeying a direct order of Defendant Cartensen (Dkt. # 67, p. 4). On April 12, 2001, the Hearing Administrator upheld hearing officer's major misconduct guilty finding on the ticket issued by Defendant Cartensen. *Id.*

910 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints, it noted that exhaustion may still be raised as an affirmative defense by defendants. A prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring an action in federal court. *Woodford v. Ngo*,126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386.

Accordingly, Plaintiff could not proceed in his claim against Defendants Cartensen, Haynes, and Wilkinson over their alleged conspiracy to retaliate against him with the two November 9 tickets that were dismissed until Plaintiff exhausted his administrative remedies over those two tickets. Plaintiff exhausted his administrative remedies on the two dismissed tickets that form the basis of this litigation on November 21, 2000, when the Grievance Coordinator denied Plaintiff's request to file grievances against these Defendants. Thus, Plaintiff's claim against Defendants Cartensen, Haynes, and Wilkinson, could proceed as of November 21, 2000, and Plaintiff had until Friday, November 21, 2003, to commence his litigation.

Plaintiff's Complaint filed on December 18, 2003, was filed beyond Michigan's three year statute of limitations and his cause of action for the alleged wrongdoing of November 8, 2000, had lapsed by that date.

## IV.    Conclusion:

Accordingly, for the reasons stated above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment on their statute of limitation defense be **GRANTED** and all claims against

them dismissed with prejudice..

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections by September 4, 2008, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 18, 2008                                    s/Steven D. Pepe
Ann Arbor, Michigan                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Report and Recommendation* was served on the

attorneys and/or parties of record by electronic means or U.S. Mail on August 18, 2008.


s/ Alissa Greer

Case Manager to Magistrate

Judge Steven D. Pepe

(734) 741-2298